**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
| ) | |
| Plaintiff,     ) | Case No. 6:25-cv-01510 |
| ) | |
| v.     ) | Dist. Judge Julie S. Sneed |
| ) | |
| ) | Mag. Judge Leslie Hoffman Price |
| RONALD EARL SCHERER, SR.;     ) | |

UNITED STATES OF AMERICA,        )

                          )

      Plaintiff,          )     Case No. 6:25-cv-01510

                          )

      v.                   )     Dist. Judge Julie S. Sneed

                          )     Mag. Judge Leslie Hoffman Price

RONALD EARL SCHERER, SR.;     )

CITIBANK, N.A., as owner trustee of    )

   New Residential Mortgage Loan Trust )

   2015-2 by Nationstar Mortgage LLC; )

NEW RESIDENTIAL MORTGAGE    )

   LOAN TRUST 2015-2;            )

THE LIONSPAW GRAND NEIGH-   )

   BORHOOD OWNERS ASSOC., INC.;)

THE LIONSPAW COMMUNITY     )

   OWNERS ASSOC., INC.;         )

THE INTERNATIONAL RESIDEN-   )

   TIAL OWNERS ASSOC., INC.      )

ABSOLUTE FINANCE, LLC; and    )

VOLUSIA COUNTY TAX          )

   COLLECTOR,                )

                          )

         Defendants.         )

**PLAINTIFF UNITED STATES' MOTION FOR PREJUDGMENT
APPOINTMENT OF RECEIVER TO SELL REAL PROPERTY**

Plaintiff United States of America moves the Court to appoint a receiver

pendente lite to take possession of and market for sale Defendant Ronald E.

Scherer, Sr.'s real property located at 35 Lionspaw Grand, Daytona Beach, FL

32124 (identified in the United States' Amended Complaint as the "Real

Property").   The Real Property, which is encumbered by federal tax liens exceeding $3.8 million, is currently vacant, and the utilities are presently turned off.   The visible areas of the Real Property are exhibiting signs of neglect, including a swimming pool with water that has turned green.   Furthermore, the United States does not expect that Defendant Scherer will make mortgage payments and/or property tax payments during this case (having ceased making mortgage payments long ago), with the growing mortgage balance eating into the government's recovery.   To halt the irreparable harm to the United States from further delay, the United States asks the Court to appoint a local real estate agent, Geri Westfall, as receiver to take possession and begin marketing the Real Property for sale.   The proceeds of any sale will be used to pay costs of sale and any outstanding property taxes, before the remaining proceeds are deposited in the Court's registry subject to the remaining claims of the United States and the other parties.

In support of this motion is attached a Memorandum of Law, a Declaration of James J. Doane, Sr., and accompanying exhibit, a Declaration of Philip L. Bednar and accompanying exhibits, and a Declaration of the receiver-nominee Geri Westfall and accompanying exhibit.   The United States requests that the Court grant the motion.   And as explained below, the Court should grant leave to the United States to permit the filing of a proposed order appointing receiver.

## LOCAL RULE 3.01(k) REQUEST FOR LEAVE TO SUBMIT PROPOSED ODRER

Local Rule 3.01(k) states that "[u]nless otherwise permitted by these rules, no party in a civil action may submit a proposed judgment or other order without leave." The United States requests that the Court permit the filing of a proposed order on this motion, as the proposed order contains specific language regarding the Receiver's duties, responsibilities, and compensation, as well as specific procedures governing the listing price, earnest money deposit, vacating the premises, removal of personal property from the real property, and reimbursement of the Receiver's out-of-pocket costs. The United States has submitted similar proposed orders in the cases cited in the accompanying brief. The proposed receiver, Geri Westfall, has reviewed a draft of the proposed order and agrees to its terms.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that on December 19-23, 2025, I conferred by email with counsel for Absolute Finance, LLC ("Absolute Finance"), Citibank, N.A. ("Citibank"), New Residential Mortgage Loan Trust 2015-2 ("New Residential"), The Lionspaw Grand Neighborhood Owners Association, Inc. ("Lionspaw Grand"), and the Volusia County Tax Collector. No other parties have appeared in the case. Counsel for Citibank, New Residential, Lionspaw Grand, and the Volusia County Tax Collector both stated that they do not intend to oppose this motion.

Counsel for Absolute Finance stated that his client "objects to any motion seeking prejudgment appointment or sale as such would not be appropriate until after the Court rules on the pending motions for remand and reconsideration."[1] Therefore, at this time the parties cannot resolve any part of this motion.

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Philip L. Bednar*
PHILIP L. BEDNAR
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 55
Washington, D.C.   20044
202-307-6415 (v)
202-514-5238 (f)
Philip.L.Bednar@usdoj.gov
Counsel for Plaintiff United States of
America

---

[1] The United States contends that Absolute Finance is litigating in bad faith knowing that the tax liens are senior to the judgment lien assigned to it, which was agreed by the original judgment creditor, from which Absolute Finance acquired the judgment without realizing the Real Property was over-encumbered by senior federal tax liens.   To the extent Absolute Finance causes delay, and that delay causes the accrual of additional senior secured debt of the mortgagee or county, the United States intends to seek damages against both Absolute Finance and its attorney(s).   Absolute Finance's claim is also small enough that if it is later held to have priority, it will be fully paid.   It therefore has no legitimate interest in stalling a sale and the deposit of proceeds with this Court.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>  Plaintiff, )<br><br>  v. )<br><br>RONALD EARL SCHERER, SR.; )<br>CITIBANK, N.A., as owner trustee of )<br> New Residential Mortgage Loan Trust )<br> 2015-2 by Nationstar Mortgage LLC; )<br>NEW RESIDENTIAL MORTGAGE )<br> LOAN TRUST 2015-2; )<br>THE LIONSPAW GRAND NEIGH- )<br> BORHOOD OWNERS ASSOC., INC.;)<br>THE LIONSPAW COMMUNITY )<br> OWNERS ASSOC., INC.; )<br>THE INTERNATIONAL RESIDEN- )<br> TIAL OWNERS ASSOC., INC. )<br>ABSOLUTE FINANCE, LLC; and )<br>VOLUSIA COUNTY TAX )<br> COLLECTOR, )<br>  )<br>  Defendants. ) | Case No. 6:25-cv-01510<br><br>Dist. Judge Julie S. Sneed<br><br>Mag. Judge Leslie Hoffman Price |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF UNITED
STATES' MOTION FOR PREJUDGMENT APPOINTMENT OF
RECEIVER TO SELL REAL PROPERTY**

Plaintiff United States is a judgment creditor of Defendant Ronald E.

Scherer for unpaid federal income tax liabilities exceeding $3,800,000, with

recorded Notices of Federal Tax Liens regarding these liabilities.   The United

States brought this action to collect those unpaid taxes, by seeking enforcement of

the resulting federal tax liens by a judicial sale of Defendant Scherer's real property at 35 Lionspaw Grand, Daytona Beach, FL 32124 (the "Real Property"). Because the United States has a high likelihood of success on its claims—indeed, Scherer's federal income tax liabilities have already been reduced to judgment, and he is the undisputed holder of record title to the Real Property—and because the United States is irreparably harmed by every day that passes, the Plaintiff United States now seeks the immediate appointment of a receiver, prior to judgment resolving the relative lien priorities, to market and sell the Real Property.

The likelihood of success on the United States' lien-enforcement claim is very high.   As stated above, the United States already obtained a money judgment regarding Scherer's federal income tax liabilities for years 1990-1992.   Federal tax liens have attached to the Real Property, which none of the parties to this case disputes.   The only defense raised by any of the parties is Absolute Finance, LLC's contention that its state-court foreclosure suit (which was consolidated with this case) should be remanded back to state court so that it can conduct its own foreclosure sale.   As will be explained (and has already been briefed in multiple contexts in this case), Absolute Finance's argument that it has a right to attempt to sell the property to another person that fails to realize at first that there are federal tax liens over-encumbering the property is meritless. And any suggestion that its lien is superior is frivolous.

Irreparable harm supports immediate appointment of a receiver before judgment on the United States' lien enforcement claim.   The Real Property is currently vacant, and the utilities are presently turned off.   The visible areas of the Real Property are exhibiting signs of neglect, including a swimming pool with water that has turned green.   Furthermore, the United States does not expect that Defendant Scherer will make mortgage payments and/or property tax payments during this case.   The real-estate agent the United States seeks to have appointed as receiver estimates the Real Property will sell for approximately $650,000.   The Real Property's estimated fair market value will continue to decline, and the United States's recovery will continue to be eroded through accumulating senior mortgage interest and super-priority property taxes, if the United States does not enforce its liens through a receiver's sale in this case.   Any lien priority dispute between the United States and Absolute Finance or other lienholders can be resolved after the property has been sold.   Absolute Finance will be fully paid if its lien is ultimately held to be senior to the federal tax liens.[2]

---

[2] As recited in a footnote to the underlying motion, the United States intends to seek damages against Absolute Finance and its counsel (see 28 U.S.C. § 1927) for bad faith litigation should its opposition to this motion result in the accumulation of additional senior debt.

## BACKGROUND FACTS

### A.    Background Regarding the Real Property and Encumbrances Thereon.

On December 26, 2001, Defendant Ronald E. Scherer obtained legal title to the Real Property pursuant to a warranty deed from Paul B. Brooks that was recorded with the Volusia County Clerk of Court on January 4, 2002.   Declaration of Philip L. Bednar ("Bednar Decl."), Ex. A (deed).

On December 31, 2001, Scherer granted a mortgage on the Real Property to Option One Mortgage Corporation.   Bednar Decl., Ex. B (mortgage).   The mortgage secures a loan from Option One to Scherer in the amount of $376,000. The mortgage was recorded with the Volusia County Clerk of Court on January 4, 2002.   The mortgage was subsequently assigned to Wells Fargo Bank, N.A., as trustee for Option One Mortgage Loan Trust 2002-1 Asset-Backed Certificates, Series 2002-1, which assignment was recorded with the Volusia County Clerk of Court on June 3, 2008.   Bednar Decl., Ex. C (assignment).   The mortgage was then assigned to New Residential Mortgage Loan Trust 2015-2, which assignment was recorded with the Volusia County Clerk of Court on April 25, 2017.   Bednar Decl., Ex. D (assignment).

There are additional encumbrances on the Real Property.   On April 20, 2009, December 6, 2010, October 11, 2016, and May 18, 2021, The Lionspaw Grand Neighborhood Owners' Association, Inc., recorded lien claims with the

Volusia County Clerk of Court.   Ex. E (Lionspaw Grand HOA lien claims).   On

May 19, 2020, The International Residential Owners Association, Inc., recorded a

lien claim with the Volusia County Clerk of Court.   Ex. F (International HOA lien

claim).   On January 23, 2009, and February 16, 2010, and September 29, 2014,

The Lionspaw Community Owners Association, Inc., recorded lien claims with the

Volusia County Clerk of Court.   Ex. G (Lionspaw Community HOA lien claim).

## B. Scherer's Federal Income Tax Liabilities and IRS Notice of Federal Tax Lien.

As of December 10, 2025, Defendant Ronald E. Scherer, Sr., has a balance

due of $3,895,658.07, after application of credits and withholdings, for unpaid

federal income taxes for years 1990-1992, and after application of substantial

distributions (over $2.5 million) by a receiver from the sale of a nursing home

facility in *United States v. Scherer, et al.*, Case No. 2:19-cv-3634 (S.D. Ohio).

Declaration of James J. Doane, Sr. ("Doane Decl."), ¶ 5, Ex. A (INTST report).

On September 21, 2006, the IRS recorded a Notice of Federal Tax Lien ("NFTL")

with the Volusia County Clerk of Court, at Book 5918, Page 1605, in accordance

with 26 U.S.C. § 6323(f) as to Scherer's 1990-1992 federal income tax liabilities.

On November 2, 2015, the IRS timely re-filed its Notice of Federal Tax Lien with

the Volusia County Clerk of Court, at Book 7180, Page 1947, regarding Scherer's

the above-referenced liabilities.   On September 8, 2025, the IRS timely re-filed

again its Notice of Federal Tax Lien with the Volusia County Clerk of Court, at

Book 8750, Page 4018, regarding Scherer's above-referenced liabilities.[3]   Bednar Decl., Ex. H (NFTL).

On July 26, 2017, in the case of *United States v. Scherer, et al.*, Case No. 2:14-cv-00452 (S.D. Ohio) judgment was entered in favor of Plaintiff United States of America and against Defendant Ronald E. Scherer with respect his federal income tax liabilities for years 1990, 1991, and 1992, in the amount of $5,429,482.54 plus statutory accruals from June 30, 2017, until fully paid.   Bednar Decl., Ex. I (judgment).   On May 17, 2023, an abstract of judgment was recorded with the Volusia County Clerk of Court, at Book 8407, Page 4881.   Bednar Decl., Ex. J (abstract of judgment).

### C.    Procedural History.

The United States filed this case with this Court on August 7, 2025.   Docket No. 1.   On September 17, 2025, the United States filed its Amended Complaint, which added Absolute Finance, LLC ("Absolute Finance"), as a party.   Docket No. 13.   Through this case, the United States seeks to enforce federal tax liens against the Real Property.   All parties in this case have been served with the summons and Amended Complaint.

---

[3] Refilings are required every 10 years under 26 U.S.C. § 6323(g).   A judgment extends the limitations period indefinitely under 26 U.S.C.§ 6502.

Pursuant to 26 U.S.C. § 7403(b), the United States named all parties with a potential interest in the Real Property, including the mortgage holder (New Residential Mortgage Loan Trust 2015-2 and its owner trustee, Citibank, N.A.), condominium associations with recorded lien notices, Absolute Finance (the recent assignee of a state-court foreclosure judgment held by one of the condominium associations), and the county property tax collector.

On October 29, 2025, the Court entered an order granting the United States' motion to consolidate this case with *Absolute Finance, LLC v. Scherer, et al.*, Case No. 6:25-cv-01789 (M.D. Fla.).   Docket No. 29.   In that case, Absolute Finance, the assignee of a state-court foreclosure judgment held by one of the condominium associations, seeks to conduct its own foreclosure sale of the Real Property.   The United States removed the case to this Court and then filed its Answer in the removed case.   Absolute Finance has since filed a motion for reconsideration of the consolidation order (Docket No. 31), to which the United States filed an opposition (Docket No. 37).   The Court has not yet ruled on the reconsideration motion.   The gist of the reconsideration motion is the wish of Absolute Finance to have this Court decouple the cases, dismiss the United States from Absolute Finance's suit and remand it to the state court where it hopes a buyer will not realize the senior tax liens mean the buyer is acquiring a pig in a poke.

Related to that wish, also before the Court is a fully-briefed motion by Absolute Finance to remand its state-court foreclosure action to state court. The United States filed an opposition to that motion. The Court has not yet ruled on the motion to remand.

On December 8, 2025, the United States filed a request for Clerk's entry of default against Defendants Ronald E. Scherer, Sr., The Lionspaw Grand Community Owners Association, Inc., and The International Residential Owners Association, Inc. Docket No. 42. On December 18, 2025, the Court ordered the request to be re-filed by January 8, 2025, with additional information. Docket No. 46. Despite Scherer's default, his son has informally indicated acquiescence.

### D.    Status of the Real Property.

Geri Westfall, a local real estate agent whom the United States seeks to appoint as the receiver regarding the Real Property, has conducted due diligence regarding the property through public records and information contained in multiple listing service ("MLS") databases. She has also seen the outside of the house and the front yard from the street. She observed that the property has been neglected over the last year or so. The water in the pool has turned green, the paint on the body of the house is discolored and peeling, and the landscaping needs a thorough cleaning up. Declaration of Geri Westfall ("Westfall Decl."), ¶¶ 10-11.

The undersigned government counsel has learned, through conversations and other communications with Defendant Scherer's son, that Mr. Scherer has moved out of the property, the Real Property is currently vacant, and utilities to the Real Property are presently turned off.   Bednar Decl., ¶ 12.   Furthermore, the United States does not expect that Defendant Scherer will make mortgage payments and/or property tax payments during this case.   He has not made mortgage payments since well before his bankruptcy petition filed in March of 2025. The current balance on the mortgage is believed to be approximately $265,000.   Ms. Westfall believes that the Real Property can be expected to sell for approximately $650,000.   Westfall Decl., ¶ 13.

## ARGUMENT

### A.    The Court Has Authority to Appoint a Receiver Prior to Judgment Even Against a Taxpayer Let Alone a Creditor.

The Internal Revenue Code grants the Court the power to appoint a receiver in this case by authorizing the issuance of "orders appointing receivers, and such other orders and processes...as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).   In actions brought under § 7403, as here, "at the instance of the United States, the court may appoint a receiver to enforce the lien." 26 U.S.C. § 7403(d).   "Together, Sections 7402(a) and 7403(d) provide the Court with broad discretion to appoint a receiver to liquidate property subject to federal tax liens to assist the United States in the

collection of taxes." *United States v. Scherer*, 532 F. Supp. 3d 485, 489 (S.D. Ohio 2021), *reconsideration denied*, No. 2:19-CV-03634, 2021 WL 2808726 (S.D. Ohio July 6, 2021).   These mechanisms are among the government's "formidable arsenal of collection tools," the "common purpose" of which is "to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *United States v. Rodgers*, 461 U.S. 677, 683 (1983).

The United States often asks courts to appoint local real estate agents as receivers to sell property—residential real estate in particular—when enforcing tax liens.   *See, e.g.*, *United States v. Thody*, 2022 WL 2230169 (W.D. Mich. June 9, 2022); *United States v. Scherer*, 532 F. Supp. 3d 485, 489 (S.D. Ohio 2021) (involving the same taxpayer as this case and the sale of a senior care facility).   In the experience of the United States, the sale of real property by a local real-estate agent acting as a receiver is likely to yield a higher sale price and larger net proceeds than would an auction sale by the United States Marshal.   *See United States v. Smith*, 2008 WL 4960430, at *12 (S.D. Ohio Nov. 19, 2008) ("To the extent that sale of the property on the open market may more closely approximate fair market value of the property than a judicial sale by auction . . . the government may wish to consider appointment of a receiver pursuant to § 7403(d)"); *United States v. Morrison*, 2012 WL 9245966, *2 (D. N.H. Jan. 23, 2012) ("The United States may submit a subsequent motion and proposed order setting forth the

procedures for the sale(s) of the First Main Street Property and the Second Main Street Property by a licensed real estate agent to be appointed as receiver under 26 U.S.C. § 7403(d) who agrees to act as such for compensation equal to a customary real estate agent's commission.").[4]

Once appointed receiver, the agent is able to sell the property in essentially the same manner as in a typical residential real estate transaction. The receiver agrees to work for the customary commission (and share it with a buyer's agent if there is one). Any sale contract entered into by the receiver must be approved by the Court before the transaction may close and other parties with an interest will have a chance to object if they believe that the price is too low.

It is also well established that a court may appoint a receiver to enforce a tax lien during the pendency of a § 7403 action where there is risk of waste or dissipation of assets. *See Lebanon Woolen Mills, Inc. v. United States*, 311 F.2d 364, 366–67 (1st Cir. 1962) (affirming appointment of receiver during pendency of action due to alleged fraudulent conveyance); *see also United States v. Peelle Co.*, 224 F.2d 667, 669–70 (2d Cir. 1955) (affirming interlocutory appointment of

---

[4] Other cases appointing real estate agents under § 7403(d) include *Wilmington Savs. Fund Soc'y, FSB v. Cosmano*, 2022 WL 160286, *5 (N.D. Ill. Jan. 18, 2022), *United States v. Poteet*, 792 F. Supp. 2d 1201, 1208 (D. N.M. 2011); *United States v. Wagster*, 2017 WL 4479730 *1 (E.D. Mich. Oct. 5, 2017); *United States v. Kain*, 2017 WL 5176696 (N.D. Ind. Oct. 13, 2017); *United States v. Morgan*, 2021 WL 3421708, *13 (D. Conn. Aug. 5, 2021).

receiver, under § 7403(d), to prevent waste and dissipation of assets).   This is because "the remedy of the appointment of a receiver does not depend on the Government's having already proved its claim and its lien"; but rather, a receiver may immediately be appointed "where the record shows that a substantial tax liability probably exists, and that the Government's collection of the tax may be jeopardized if a receiver is not appointed."   *United States v. O'Connor*, 291 F.2d 520, 525 (2d Cir. 1961) (Friendly, J.) (quoting 9 Mertens, *Law of Federal Income Taxation*, Supp. (1960)).   Although the Eleventh Circuit has not articulated a test for appointing a prejudgment receiver pursuant to [Sections] 7402(a) and 7403(d), "[o]ther circuits have held that the Government must make a prima facie showing that (1) a substantial tax liability probably exists and (2) the Government's collection efforts may be jeopardized if a receiver is not appointed."   *United States v. Newman*, No. 2:22-cv-00373-JAW, 2023 WL 6976481, at *6 (D. Me. Oct. 23, 2023) (internal quotations omitted) (citing *Matter of McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994)) (adopting two-part *O'Connor* and *McGaughey* standard and granting United States' motion for appointment of prejudgment receiver).   *See also Florida v. United States*, 285 F.2d 596, 602 (8th Cir. 1960) (affirming appointment of prejudgment receiver).

These cases normally concern tax not yet reduced to judgment against the taxpayer.   Here, a substantial tax liability surely—not just probably—exists

because it has been reduced to judgment and remains unpaid, and the

Government's collection of the tax may be jeopardized if a receiver is not

appointed to conduct a sale in the coming months.   It is not yet clear whether

Absolute Finance is actually claiming its later-created judgment lien beats the

earlier recorded federal tax liens.   The United States submits any such argument

would be frivolous but, even assuming it has a senior lien, a receiver's sale will

result in its full satisfaction.

In addition to the statutory authority in the Internal Revenue Code, it is well-

recognized that this Court has inherent equitable power to appoint a receiver to

manage or preserve property pending judgment.   *Peyton v. Grant*, 2024 WL

5264270, at *4 (S.D. Fla. Dec. 31, 2024); *First Horizon Bank v. Premier Holdings,

LLC*, 2025 WL 36522, at *2 (M.D. Ala. Jan. 6, 2025).   *See also Nat'l P'ship Inv.

Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (stating that

the appointment of a receiver in equity is not a substantive right but instead is an

ancillary remedy); *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 298 F Supp.

3d 834, 846-47 (W.D. Va. 2018) (collecting cases for proposition that receivership

is not a substantive cause of action but an equitable remedy in aid of execution).

Thus, in exercising its discretion to appoint a receiver, the Court may also consider

the following factors: (1) fraudulent conduct by the defendant; (2) imminent

danger that property will be concealed, lost, or diminished in value; (3) inadequacy

of legal remedies; (4) probability that harm to plaintiff by denying appointment of receiver would exceed injury to parties opposing appointment; (5) plaintiff's likelihood of success on the merits; and (6) whether receivership would in fact serve plaintiff's interests.  *Calliope Capital Corp. v. Earthfirst Techs., Inc.*, 2008 WL 1995077, at *2 (M.D. Fla. May 6, 2008) (citing *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326–27 (1st Cir. 1988), *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234 (5th Cir. 1997)).

To the extent equitable factors are relevant, they too weigh in favor of a prejudgment receivership, as the property is vacant, the utilities are presently turned off, the property is exhibiting signs of neglect, the United States is likely to succeed in this action, and appointment of a receiver would serve the United States' interests by selling the Real Property at or near full value and the United States receiving the net sale proceeds after payment of costs of sale, property taxes, and the senior mortgage (any applying the net sale proceeds to Scherer's outstanding federal income tax liabilities).   It should be noted that Scherer's federal tax liabilities are more than 30 years old, and the liabilities are so large (over $3.8 million at present) that there is virtually no chance they will ever be collected in full.   The United States has collected what it can through other methods (including the sale of a senior living facility that Scherer owned), but the

-18-

Real Property remains the last significant source of collection identified by the United States.

Furthermore, the United States submits that the Internal Revenue Code allows for appointment of a receiver as a matter of law where a private creditor might not be entitled to one as a matter of equity. After all, the statutory Code provides that tax liens arise automatically, without a money judgment for personal liability, and authorizes the U.S. District Courts to enforce federal tax liens through the appointment of a receiver under § 7403(d). The Code does not suggest a judgment is a prerequisite for a receiver. Instead, subsection (c) of § 7403 only requires that the Court determine the merits of all claims to and liens upon the subject property. The urgency for a receiver to achieve the Code's purposes is acute here, where the property is vacant and showing signs of neglect, and the senior mortgage and property taxes are eating into the United States' eventual recovery day by day.

### B. The United States Has a High Likelihood of Success.

#### 1. Scherer's Federal Income Tax Liabilities for Years 1990-1992 Have Already Been Reduced to Judgment.

The United States has already obtained a money judgment regarding Scherer's federal income tax liabilities for years 1990-1992. Taxes being readily established, the existence of tax liens attaching to the Real Property follows because legal title to the Real Property is in Scherer's name.

-19-

The current balance of Scherer's federal income tax liabilities for years 1990-1992 is set forth in the supporting Declaration of James J. Doane, Sr., and the exhibit attached to that Declaration.

### 2. Federal Tax Liens for the Income Taxes Attached to the Real Property.

If a taxpayer, such as Ronald E. Scherer, Sr., "neglects or refuses to pay" tax "after demand," then a lien arises and automatically attaches to "all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; *S. Bank of Lauderdale Cnty. v. I.R.S.*, 770 F.2d 1001, 1005 (11th Cir. 1985). Here, tax liens automatically arose as of the dates of assessment, pursuant to 26 U.S.C. § 6321, and attached to all of Scherer's property and rights to property. That includes the Real Property, which Scherer owns.   Furthermore, the United States has recorded a Notice of Federal Tax Lien with respect to these liabilities and has timely re-filed its NFTLs twice.   There is no dispute that federal tax liens have attached and continue to encumber the Real Property.

### 3. To Date, Absolute Finance Has Raised the Only Opposition to Sale, and Its Argument Lacks Merit.

Absolute Finance will likely object to this Motion, on grounds that all issues regarding liens on the Real Property should be resolved first to determine the appropriate party to direct the sale of the property.   The Court should reject this argument.   As stated in the United States' briefing in its consolidation motion and

opposition to reconsideration of the consolidation order, both filed in this case,

Absolute Finance has yet to articulate in any way how it can benefit from remand

and conducting its own foreclosure sale of property whose liens exceed its value,

other than by hoping that one or more bidders fails to search for or find the senior

federal tax liens, as occurred with the prior sale conducted by Absolute Finance's

predecessor in interest, with Absolute Finance having similarly missed the tax lien

(or at least its seniority).   The United States' receiver sale approach creates finality

with respect to the Real Property, as it will permit the marketing and sale of the

Real Property at full value, and all parties with an interest in the Real Property

have been named in this case.   Furthermore, exigent circumstances exist to sell the

property through a receiver now, as the property is vacant, the utilities have been

turned off, and the United States does not expect that the owner will make

mortgage loan and property tax payments in the interim.   Permitting Absolute

Finance to conduct its own foreclosure sale would simply result in inefficiency and

delay, while the mortgage loan and property tax balances would continue to

increase, resulting in less money to the United States.

### C.    Any Further Delay Poses Risk to Collection Due to Declining Equity Available to Satisfy the Federal Tax Liens.

The current vacant state of the Real Property, combined with the rapidly

declining equity in the Real Property caused by accruing senior mortgage interest

and attorney's fees, as well as property taxes, establish that collection is at risk of

permanent impairment, thus satisfying the second requirement for a prejudgment

appointment of a receiver to enforce the tax liens under I.R.C. § 7403.

Most pressing, the Real Property is vacant, the utilities are currently turned

off, and the property is exhibiting signs of neglect.   Prolonging a sale would only

worsen the Real Property's condition and place it at risk.   In addition, should the

Real Property's condition continue to decline, further repairs will be needed,

leading to a lower sale price or out-of-pocket costs incurred by the Receiver, either

of which would reduce the United States' recovery.

The experienced real estate agent that has been nominated as receiver, Geri

Westfall, conducted due diligence with respect to the Real Property to evaluate its

salability, as detailed in her Declaration attached hereto.   She determined that the

Real Property could currently sell for about $650,000.   *See* Declaration of Geri

Westfall ("Westfall Decl."). ¶¶ 11-12.

### D.    Other Equitable Factors Weigh in Favor of Immediate Receivership.

A number of the equitable factors identified by this Court (citing decisions

by other circuit courts of appeals) as weighing in favor of a prejudgment

receivership also apply in this case and should be weighed by the Court in the same

manner.   *See* pages 14-15 *supra*, citing *Calliope Capital Corp. v. Earthfirst*

*Techs., Inc.*, 2008 WL 1995077, at *2 (M.d. Fla. May 6, 2008) (citing *Consol. Rail*

*Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326–27 (1st Cir. 1988), *Santibanez v.*

*Wier McMahon & Co.*, 105 F.3d 234 (5th Cir. 1997)).   Two of the factors are already established above: the United States is highly likely to succeed in the action and obtain a judgment entitling it to enforcement of its tax liens, *supra* section B, and the United States' interests are susceptible to irreparable injury without an immediate receivership, *supra* section C.   Other factors also weigh in favor of a receivership.

First, available legal remedies are not adequate. The United States seeks to enforce liens against the Real Property because of limited known alternative collection options.   Scherer's federal tax liabilities are more than 30 years old, and the liabilities are so large (over $3.8 million at present) that they are unlikely to be collected in full.   The United States has collected what it can through other methods (including the sale by a court-appointed receiver of a senior living facility that Scherer owned), but the Real Property remains the last significant source of collection identified by the United States.   Each dollar lost on the sale because of delay or waste is a dollar that could have gone to the United States and will likely never be collected in the future.

Next, the harm to the United States of denying the appointment of a receiver exceeds the harm to Absolute Finance of permitting such appointment.   As stated above, exigent circumstances exist justifying an immediate sale, given the condition of the property, accruing interest and fees on the senior mortgage, and

accumulating property taxes.   Further delay will only cause to reduce the United States' recovery.   Absolute Finance's judgment position is junior to the United States' federal tax liens.   Given the property's fair market value, Absolute Finance would be entitled to zero recovery on its judgment claim, whether through a receiver's sale or its own foreclosure sale, unless it can take advantage of a potential buyer who doesn't do its due diligence and fails to learn of the senior federal tax liens and mortgage.   That is not a protected "injury" that is contemplated by the equitable factors used to weigh in favor or against the appointment of a receiver.   Even assuming somehow Absolute Finance's lien is superior to the federal tax liens, it would then be fully paid from a receiver's sale and so it cannot be harmed.

The Court should allow the United States to sell the property now, through its proposed receiver.   Any disputes about the various creditors' priority to the proceeds can be decided in due course.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion and appoint a receiver to protect and preserve the Real Property and market it for sale.

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General,
Tax Litigation Branch

*/s/ Philip L. Bednar*
PHILIP L. BEDNAR
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 55
Washington, D.C.   20044
202-307-6415 (v)
202-514-5238 (f)
Philip.L.Bednar@usdoj.gov
Counsel for Plaintiff United States of
America

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered parties.

I hereby further certify that on December 23, 2025, I caused a copy of the foregoing document to be mailed first-class U.S. Mail, postage prepaid, properly addressed to the following non-ECF parties:

The Lionspaw Community Owners Association, Inc.
Attn:   Solaris Management, Inc., Registered Agent
1452 N US Hwy 1
Suite 102
Ormond Beach, FL   32174
**Defendant**

The International Residential Owners Association, Inc.
Attn:   Solaris Management, Inc., Registered Agent
1452 N US Hwy 1
Suite 102
Ormond Beach, FL   32174
**Defendant**

Ronald E. Scherer
P.O. Box 730478
Ormond Beach, FL   32173
**Defendant**

/s/ Philip L. Bednar

PHILIP L. BEDNAR
Trial Attorney
United States Department of Justice, Civil
Division, Tax Litigation Branch